IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BOARD OF TRUSTEES, ) <br> NATIONAL SHOPMEN PENSION FUND, ) <br> et al., ) <br>       Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> NORTHERN STEEL CORP., et al., ) <br> ) <br>       Defendants ) | Civil Action No. 05-cv-01479 (RWR) |

## STATEMENT OF UNDISPUTED MATERIAL FACTS
## IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, the Board of Trustees of the National Shopmen Pension Fund, hereby submits the following Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment.

The following facts are undisputed.

1.  Plaintiff comprises individual trustees who are "fiduciaries" with respect to the National Shopmen Pension Fund (the "Fund") as defined in § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are collectively the "plan sponsor" within the meaning of § 4001(a)(10)(A) of ERISA, 29 U.S.C. § 1301(a)(10)(A). Declaration of A.H. Higgs, Jr. ("Higgs Dec.") ¶ 3, filed concurrently herewith.

2.  The Fund is a multiemployer pension plan within the meaning of § § 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. § § 1002(37) and 1301(a)(3). Higgs Dec. ¶ 4.

3.  At all times relevant hereto, Northern Steel was signatory to a collective bargaining agreement with the Shopmen's Union Local 612, which obligates it to make

contributions for pension benefits on behalf of certain employees to the Fund. See Answer; Higgs Dec., ¶ 5.

4.  Northern Steel ceased having employees after October 31, 2001. See portions of the deposition of Romao Caruso ("R. Caruso Dep."), pp. 8-9, attached as Exhibit A to the Declaration of Jefffrey Swyers ("Swyers Dec.").

5.  In accordance with ERISA § 4201- 4225, 29 U.S.C. § § 1381-1461, the Fund determined that Northern Steel had effected a complete withdrawal from the plan as of October, 2001 and determined its withdrawal liability to be $5,397,100.00. A true and correct copy of that calculation is attached as Exhibit A to the Higgs Dec. Higgs Dec. ¶ 10.

6.  By letter dated September 30, 2003 to Northern Steel at 364 East Avenue, Oswego, N.Y. 13126, the Fund notified defendants that it had determined that Northern Steel had withdrawn from the Fund in complete withdrawal and that the amount of its withdrawal liability is $5,397,100 and that the first quarterly payment in the amount of $2,832.00 must be paid by October 30, 2003. A true and correct copy of that letter is attached as Exhibit B to the Higgs Dec. Higgs Dec. ¶ 11.

7.  By letter dated February 10, 2004, to Northern Steel in care of its President,George H. Caruso, the Fund again notified defendants that it had determined that Northern Steel had withdrawn from the Fund in complete withdrawal and that the amount of its withdrawal liability is $5,397,100 and that the first quarterly payment in the amount of $2,832.00 must be paid. A true and correct copy of that letter is attached as Exhibit C to the Higgs Dec. Higgs Dec. ¶ 12.

8. Based upon the repayment schedule in the Notices, Northern Steel was to pay $2,832.00 per month for 240 months. This would have resulted in a total payment of $679,680.00 of the full withdraw liability. This is the amount owed to the Fund under ERISA. Higgs Dec. ¶ 13.

9. Defendants failed to pay any of the quarterly withdrawal liability payments to the Fund, did not request plan sponsor review of the withdrawal liability payments, and did not initiate arbitration at any point. Higgs Dec., ¶ 14.

10. Defendant, Oswego Amusements, Inc. was in the business of owning and operating a speedway racing track. R. Caruso De., p. 15-16.

11. Both Northern Steel and Oswego Amusements, Inc. were wholly owned by George H. Caruso and his two brothers Harry and George. R. Caruso Dep., p. 15-16, Exhibit 3 to R. Caruso dep.

12. George H. Caruso was president of both Northern Steel and Oswego Amusements, Inc. R. Caruso Dep., pp. 26, 28, Exhibit 3 to R. Caruso Dep.

13. Oswego Amusements, Inc. and Northern Steel operated out of the same address. R. Caruso Dep., pp. 50, 52-53.

14. Over a period of years Northern Steel provided workers and materials to Oswego Amusements, Inc., and there was no agreement between the two companies for payment or repayment. R. Caruso Dep., pp 18, 22, 35-36.

15. In 1991, Harry Caruso's shares of stock in Oswego Amusements were redeemed. He received a note back from Oswego Amusements for $650,000, but the note was never repaid by the company. R. Caruso Dep., p.29-30, Exhibit 3 to R. Caruso Dep.

16.     In 1992, George H. Caruso gifted his shares of stock in Oswego Amusements, Inc., to his three sons: George D. Caruso, Douglas Caruso, and Romao Caruso. He remained president of Oswego Amusements, Inc., and later served as Chairman of the Board. Exhibit 3 to R. Caruso Dep.

17.     Also, in 1992, the three sons of George H. Caruso, established Oswego Speedway, Inc. to operated the speedway, while Oswego Amusements, Inc. remained the owner of the racetrack. R. Caruso, Inc. Exhibit 3 to R. Caruso Dep.

18.     In 2000, Romao Caruso, on behalf of Oswego Amusements, Inc. and at the advice of counsel, drafted a note from Oswego Amusements, Inc. to Northern Steel for $500,000. This was to represent the labor and materials Northern Steel had supplied to Oswego Amusements over the years. The note was not negotiated with Northern Steel, and Northern Steel never demanded the note or payment on the Note. The Note was never repaid. R. Caruso Dep., p. 33-40.

19.     Oswego Speedway, Inc. eventually became GDR Enterprises of Owego, Inc., ("GDR"), Oswego Speedway, Inc. and GDR are one and the same. R. Caruso Dep. P. 44, 47-48.

20.     When Northern Steel Corp. was sold the proceeds in the amount of $240,848.00 were deposited into the bank account of GDR. Exhibit 3 to R. Caruso Dep.

21.     Also, when the race track owned by Oswego Amusements was sold, the proceeds in the amount of $344,831.95 were placed into an account owned by GDR. Exhibit 3 to R. Caruso Dep.

22.     The only activity of GDR is to hold the money of Northern Steel and pay Northern Steel's insurance premiums. R. Caruso Dep. P. 45-46.

23. GDR is wholly owned by George D. Caruso, Douglas Caruso, and Romao Caruso. They are the Corporations only officers. R. Caruso Dep., p. 48-49.

24. Based upon the collections policy adopted by the Board of Trustees, Defendants are also liable for interest on the withdrawal liability at the IRS rate, currently 7%, and liquidated damages in the amount of 20 per cent of the withdrawal liability. Higgs Dec. ¶ 15.

Dated: April 2, 2007

Respectfully submitted,
/s/ Jeffrey S. Swyers
Marc Rifkind, Esq (D.C. Bar No. 416183)
Jeffrey S. Swyers (D.C. Bar No. 494290)
SLEVIN & HART, P.C.
1625 Massachusetts Ave., NW Ste. 450
Washington, DC 20036
(202) 797-8700 (Telephone)
(202) 234-8231 (Facsimile)

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of April, 2007, I caused the foregoing document to be served by ECF notification upon the following party:

Dirk J. Oudemool
Attorney at Law
The Monroe Building, Ste. 600
333 East Onodaga Street
Syracuse, New York 13202

Attorney for Defendant

/s/ Jeffrey S. Swyers
Jeffrey S. Swyers

40696