**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BOARD OF TRUSTEES,** ) | |
| **NATIONAL SHOPMEN PENSION FUND,** ) | |
| **et al.,** ) | **Civil Action No. 05-cv-01479 (RWR)** |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **NORTHERN STEEL CORP., et al.,** ) | |
| ) | |
| **Defendants** ) | |
| ————————————————————) | |

**PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiff, the Board of Trustees of the National Shopmen Pension Fund (the "Fund"), submit the following Statement of Points and Authorities in Support of Their Motion for Summary Judgment.

**INTRODUCTION**

This case is brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001 et seq. (1982). Plaintiff seeks a judgment awarding withdrawal liability, interest, and liquidated damages incurred by an Defendant Northern Steel Corp. ("Northern Steel") as a result of a withdrawal from the Fund, a multiemployer pension plan, as well as an award of the fees and costs incurred by the Fund to collect the amounts due resulting from Northern Steel's withdrawal.  The Fund  asserts that Defendants Oswego Amusements, Inc. GDR Enterprises of Oswego, Inc. ("GDR") are alter egos of Northern Steel and are thus joint and severally liable for the withdrawal liability of Northern Steel.  Defendants also assert that the corporate veils of all

these entities should be pierced and that Defendants George Caruso, Jr. And Romao Caruso should held liable for the withdrawal liability debt.

## STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions of file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Flynn v. Interior Finishes, Inc.*, 425 F.Supp.2d 38, 43 (D.D.C. 2006).

## ARGUMENT AND AUTHORITIES

### 1.    Notice to Northern Steel and Failure to Pay, Request Review, or Initiate Arbitration.

It is undisputed that Northern Steel withdrew from the Fund as of October 2001. Plaintiff's Statement of Undisputed Material Facts ("Plaintiff's Facts") ¶ 4. It is also undisputed that Northern Steel received notice of the Fund's determination of withdrawal liability, and did not pay, request review, or initiate arbitration at any point. Plaintiff's Facts ¶¶ 5-9. It is black letter law that any dispute between an employer and a multiemployer pension plan, such as the Fund, concerning a determination of withdrawal liability under ERISA must be resolved through arbitration. *See* 29 U.S.C. § 1401(a)(1), (b)(1) (ERISA § 4221(a)(1), (b)(1)); *McDonald v. Centra Inc.*, 946 F. 2d 1059, 1063 (4th Cir. 1991); *Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1056 (7th Cir. 1988). By failing to timely request arbitration, the withdrawal liability of Northern Steel as assessed by the Fund became fixed, and due and owing. *New York State Teamsters v. St. Lawrence Transit*, 612 F. Supp. 1003, 1006 (N.D.N.Y. 1985). Therefore, the Fund is entitled to summary judgment against Northern Steel for the withdraw liability in the amount of $679,680.00, plus interest at the rate of 7 percent, liquidated damages in the amount of

2

20 percent of the withdrawal liability, and reasonable attorney's fees and costs. Plaintiff's Facts ¶¶ 8 and 24.

### 2. Oswego Amusements, Inc. and GDR are Alter Egos of Northern Steel.

Defendants Oswego Amusements and GDR are both alter egos of Northern Steel and, therefore, are jointly and severally liable for its debt to the Fund. Alter ego liability protects the solvency of multiemployer pension plans by enabling ERISA trustees to recover delinquent contributions from a sham entity used to circumvent the participating employer's pension obligations. *Flynn v. R.C. Tile*, 353 F.3d 953, 958 (D.C. Cir. 2004).

In determining whether two entities are alter egos, courts must evaluate the similarities between the enterprises in their ownership, management, business purpose, operations, equipment, and customers, as well as any transactions or other dealings between the two entities. *R.C. Tile*, 353 F.3d at 958. In terms of evaluating the transactions or other dealings between the entities, courts have held alter ego relationships to exist in situations where there are improper interrelations and non-arms length transactions. *Id.* at 959-60. No single factor is controlling, and all need not be present to support a finding of alter ego status. *Id.*

There is simply no question of fact that Oswego Amusements, Inc. and GDR are alter egos of Northern Steel. Oswego Amusements and Northern Steel had the same owners: Harry, William, and George Casuso, Sr. George H. Caruso was president of both companies. Plaintiff's Facts ¶¶ 11-12. Both Oswego Amusements and Northern Steel operated out of the same address. Plaintiff's Facts ¶ 13. And Northern Steel regularly provided workers and materials to Oswego Amusements without compensation from the latter and with no written agreement between the two companies for payment for those services. Plaintiff's Facts ¶ 14.

Defendants attempted to change the ownership structure of Oswego Amusements, Inc. by

3

gifting all of the shares to George H. Caruso's three sons: George Jr., Douglas, and Romao Caruso, however, no consideration was given to the company for any of the stock redeemed or received. Plaintiff's Facts ¶¶ 15-16. Significantly, even after the transaction, George H. Caruso remained president and Chairman of the Board of Oswego Amusement's. Plaintiff's Facts ¶16. *See Central States, Southeast & Southwest Areas Pension Fund v. Sloan*, 902 F.2d 593, 597 (7th Cir. 1990) (intra-family transfer of assets without consideration a sham; transferee held alter ego under ERISA).

The undisputed facts establish that, after this transaction, the relationship between the companies continued to be characterized by the transfer and commingling of assets. In 2000, Romao Caruso, on behalf of Oswego Amusements, Inc., and at the advice of counsel, drafted a note from Oswego Amusements, Inc. to Northern Steel for $500,000. This purportedly was to represent the labor and materials Northern Steel had supplied to Oswego Amusements over the years. The note was not negotiated with Northern Steel, and Northern Steel never demanded the note or payment on the Note. The Note was never repaid. Plaintiff's Facts ¶ 18.

Oswego Speedway, Inc.'s name changed to GDR, and the assets of GDR were commingled with those of Northern Steel and Oswego Amusements. Plaintiff's Facts ¶ 19-21. GDR is wholly owned by the sons of George H. Caruso: George D. Caruso, Douglas Caruso, and Romao Caruso. Plaintiff's Facts ¶ 23. They are the Corporations only officers. *Id.* When Northern Steel Corp.'s assets were sold the proceeds were deposited into the bank account of GDR. Plaintiff's Facts ¶ 20. Also, when the race track owned by Oswego Amusements was sold, the proceeds were placed into an account owned by GDR. Plaintiff's Facts ¶ 21. The only activity of GDR is to hold the money of Northern Steel and pay Northern Steel's insurance premiums. Plaintiff's Facts ¶ 22. Assets transferred among family owned businesses in non-

4

arms length transactions, provides a "clear foundation for a holding of alter ego status." *R.C. Tile* at 959; *Sloan* at 597.

Based upon these facts, it is clear that Northern Steel, GDR, and Oswego Amusements are alter egos, and, as such, GDR and Oswego Amusements should be held liable along with Northern Steel for its withdrawal liability.

### 3. The Corporate Veils of Oswego Amusements and GDR Should be Pierced to Hold George Caruso, Jr. and Romao Caruso Liable.

The corporate veils of Oswego Amusements and GDR should be pierced to hold Romao and George Caruso, Jr. liable for Northern Steel's debt to the Fund.

When the notion of a legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will disregard the corporation as an association of persons. *Quinn v. Butz*, 510 F.2d 743 (D.C. Cir. 1975). There is no specific formula dictating when courts will pierce the corporate veil. *Mazzoli v. Dupont Trading Co.*, 1989 U.S. Dist Lexis 3635 (D.D.C. 1989). Many factors have been considered by the courts and not all factors need be present. *Mazzoli.* Factors include: whether the corporation was set up to insulate individual owners from creditors; domination of the corporation by an individual so as to negate its individual shareholders; use of the same office or business location by the corporation and its individual shareholders; and undercapitalization or chronic insolvency. *Mazzoli.* Another important factor is whether there is a commingling of funds and other assets of the corporation. *Flynn v. Thibodeaux Masonry, Inc.*, 311 F. Supp.2d 30, 41 (D.D.C. 2004).

As discussed above, the companies shared assets and business locations. The affairs of Northern Steel are completely dominated by Romao Caruso and George Caruso, Jr. There is no question that there is a commingling of funds and assets. All of the remaining assets of Northern Steel have been deposited in the account of GDR. GDR's only capitalization comes from

5

Northern Steel. Romao Caruso has created notes to Northern Steel without any input from Northern Steel, thereby creating liabilities to Northern Steel on his own. GDR and its owners George Caruso, Jr. and Romao Caruso completely control the assets of Northern Steel. No corporate formalities exist as the assets of the two are completely commingled. Northern Steel cannot pay its debts without the cooperation of Romao Caruso and George Caruso Jr. This is clearly a case in which justice and equity dictate that the corporate veil be pierced.

### 4. GDR, Romao Caruso, and George Caruso, Jr. Are Liable Under the CorporateTrust Doctrine.

When the assets of a corporation are distributed to a shareholder leaving corporate debts unpaid, a shareholder, such as GDR, Romao Caruso and George Caruso, Jr. are liable to the corporation's creditors to the extent of the value of the assets they received *Central States, SE and SW Area Pension Fund v. Romito*, 2001 U.S. Dist. LEXIS 6004, 10 (D. Ill., 2001) (quoting *Central States, SE and SW Area Pension Fund v. Minneapolis Van*, 764 F. Supp. 1289, 1294 (N.D. Ill. 1989). Such a transfer is considered to be a fraud on the corporation's creditors. *Id.* at 11. "Under the trust fund doctrine, the fraudulently conveyed assets are considered to be held in trust by shareholders for the benefit of the creditors." *Id.* In the *Minneapolis Van* case, the court used its equitable power under ERISA, 29 U.S.C. Sections 1132(a)(3)(B) , to impose a constructive trust for the benefit of the pension fund plaintiff with respect to assets fraudulently conveyed to the insolvent corporation's shareholders. *Id.*

The facts are undisputed that Romao Caruso and George Caruso, Jr. as owners of GDR received the assets of Northern Steel and Oswego Amusements. They and GDR are liable to the Fund for the amounts received: $240,848.00 for the sale of Northern Steel, and $344,831.95 for the sale of Oswego Amusements. Plaintiff's Facts ¶ 20, 21.

6

## CONCLUSION

For the foregoing reasons, summary judgment should be entered in favor of the Fund against Northern Steel, Oswego Amusements, GDR, Romao Caruso, and Geroge Caruso, Jr., for the amounts detailed in Plaintiff's Complaint.

Dated: April 2, 2007                    Respectfully submitted,


                                        /s/ Jeffrey S. Swyers
                                        Marc Rifkind, Esq (D.C. Bar No. 416183)
                                        Jeffrey S. Swyers (D.C. Bar No. 494290)
                                        SLEVIN & HART, P.C.
                                        1625 Massachusetts Ave., NW Ste. 450
                                        Washington, DC 20036
                                        (202) 797-8700 (Telephone)
                                        (202) 234-8231 (Facsimile )


## CERTIFICATE OF SERVICE

I certify that on this 2nd day of April, 2007, I caused the foregoing document to be served via ECF notification upon the following party:

                        Dirk J. Oudemool
                        Attorney at Law
                        The Monroe Building, Ste. 600
                        333 East Onodaga Street
                        Syracuse, New York 13202

                        Attorney for Defendant


                                Jeffrey S. Swyers
                                Jeffrey S. Swyers

40716


7