

**National Shopmen Pension Fund**

Suite 400 • 1750 New York Avenue, N.W. Washington, D.C. 20006-5301
Telephone No: (202) 383-4874 • Fax No. (202) 628-6469

VIA OVERNIGHT MAIL

February 10, 2004



Northern Steel Corporation
c/o George H. Caruso
255 Syracuse Avenue
Oswego, NY 13126-3130

Re: Withdrawal Liability Determination and Demand for Payment: Employer No. 450, SLU No. 612

Dear Sir or Madam:

The Trustees of the National Shopmen Pension Fund (hereafter "Fund") hereby notify you of Northern Steel Corporation's withdrawal liability to the Fund and demand payment thereof. The Fund's records indicate that Northern Steel Corporation withdrew from the Fund as of October 2001.

The Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, requires that withdrawal liability be assessed against contributing employers who withdraw from the Fund after September 26, 1980 (29 U.S.C. Section 1381). Withdrawal liability is determined by allocating a portion of the Fund's unfunded vested benefits ("UVBs") to the withdrawing employer pursuant to one of the methods authorized by ERISA. The method adopted by the Trustees of the Fund is the "attributable rule". A withdrawn employer's liability under the attributable rule is the sum of: (1) the difference between the UVBs of its employees and its allocated share of the Fund's assets; and (2) a proportional share of the Fund's UVBs that are not allocated to any contributing employer. The Trustees of the Fund have directed the Fund's actuaries, The Segal Company, to calculate Northern Steel Corporation withdrawal liability. The amount of the liability has been determined to be $5,397,100. A copy of their assumptions used in this calculation is enclosed.

ERISA requires the Trustees to establish a schedule for the payment of withdrawal liability. Annual payments are based on a statutory formula and are to be paid in equal monthly installments (with interest at an annual rate of 7.5%) over a period of years necessary to amortize the liability. Northern Steel Corporation's repayment schedule, therefore, is as follows: Employer is to pay $2,832.00 per month for 240 months. The Fund hereby demands that you begin payment in accordance with the schedule no later than March 11, 2004. This repayment schedule will result in a total payment of only $679,680 of the full withdrawal liability. ERISA Section 4219 (c)(1)(B) limits the liability of the company to a twenty-year repayment plan. Accordingly, your company is not obligated to pay the full amount of the liability. You may, if you wish, pay the entire amount due, without penalty. Payments must be made notwithstanding any request for review of the withdrawal liability.

Document #: 17349



EXHIBIT C

Northern Steel Corporation.
February 10, 2004
Page 2

A withdrawn employer may, no later than 90 days after receipt of this letter, request a review of the determination, identify any inaccuracy in the Fund's determination of withdrawal liability which may exist, or furnish additional relevant information.

This letter constitutes notice of the withdrawal liability to Northern Steel Corporation. and all groups of trades or businesses under common control or common ownership with Northern Steel Corporation. The Fund hereby demands that you provide within 30 days the names, addresses, and officer names of any and all corporations, companies or entities within the common control group of Northern Steel Corporation or under common ownership of the stockholders of Northern Steel Corporation. Northern Steel Corporation is required to provide this information to the Fund within 30 days by 29 U.S.C. Section 1399.

If the Fund is required to bring suit to collect withdrawal liability, the withdrawn employer also becomes liable for interest, liquidated damages (in the amount of 20% of the amount due), and all costs of collection, including attorneys' fees.

We trust that payments will begin as scheduled. If you have any questions about this matter, do not hesitate to contact the Fund Office.

Sincerely,

A.H. Higgs, Jr.
Administrator

AHH/jw
enclosure
cc: Marc Rifkind, Fund Counsel
    SLU #612

Document #: 17349





**THE SEGAL COMPANY**
1920 N Street, N.W., Suite 400  Washington, DC 20036-1659
T 202.833.6400  F 202.833.6490  www.segalco.com

August 20, 2003

Mr. A. H. Higgs, Jr.
Administrator
National Shopmen Pension Fund
1750 New York Avenue, NW, Suite 701
Washington, DC  20006

    Re:    **Withdrawal Liability Calculation for**
                **Northern Steel Corporation**
                **Employer No. 450, SLU No. 612**

Dear Mr. Higgs:

Based on the data provided by your office dated July 22, 2003, we have calculated the withdrawal liability for the employer named above.

Since the termination of participation occurred as of October 2001, the calculations are based on factors and assumptions as of June 30, 2001, the last plan year ended before withdrawal.

The withdrawal liability in this case consists of the following:

| | | |
|---|---|---:|
| 1. | Present value of vested benefits attributable to participation by Northern Steel Corporation in the National Shopmen Pension Plan | $ 2,085,500 |
| 2. | Allocated share of assets of the National Shopmen Pension Plan | (3,311,600)[1] |
| 3. | Unfunded vested benefits attributable to Northern Steel Corporation: (1) – (2), not less than zero | $ 5,397,100 |
| 4. | Amount of obligation excused under the de minimis provisions | -0- |
| 5. | Withdrawal liability payable: (3) – (4) | $ 5,397,100 |

---

[1]    A negative allocated share of assets is the result of payments attributable to the employer in excess of contributions made by that employer.

Benefits, Compensation and HR Consulting  ATLANTA  BOSTON  CHICAGO  CLEVELAND  DENVER  HARTFORD  HOUSTON  LOS ANGELES  MINNEAPOLIS
NEW ORLEANS  NEW YORK  PHILADELPHIA  PHOENIX  SAN FRANCISCO  SEATTLE  TORONTO  WASHINGTON, DC



Multinational Group of Actuaries and Consultants  AMSTERDAM  BARCELONA  GENEVA  HAMBURG  LONDON  MELBOURNE  MEXICO CITY  OSLO  PARIS

Mr. A. H. Higgs, Jr.
August 20, 2003
Page 2

Please note that for purposes of this calculation:

1. Vesting service and benefit improvements through the withdrawal date (10/2001) are used in the determination of the present value of vested benefits.

2. The benefit service used in the determination of the present value of vested benefits is as of June 30, 2001.

3. Contributions made and benefits paid after June 30, 2001 have not been considered in the allocation of assets.

A statement of the assumptions used in our calculations is enclosed.

Sincerely,

*[signature]*

Lorraine R. Bergstresser
Enrolled Actuary No. 02-5255


LRB/lws

Attachment

163814/01684.005

## ACTUARIAL ASSUMPTIONS FOR
## NATIONAL SHOPMEN PENSION FUND
## WITHDRAWAL LIABILITY

Determination of the value of vested benefits has to be based on a set of actuarial assumptions. The law prescribes that the assumptions and methods used must be reasonable in the aggregate. It also authorizes the Pension Benefit Guaranty Corporation (PBGC) to promulgate other assumptions and methods for use by the Plan's actuary. However, the PBGC has not yet promulgated withdrawal liability assumptions, except in the event of plan termination by mass withdrawal.

As of June 30, 2001, the withdrawal liability calculations are based on the same actuarial assumptions and asset value as applied in the actuarial valuation for Plan funding, with no expense loading.

1. <u>Valuation Investment Return:</u> 7.50%

2. <u>Expenses</u>

    Allowance by discount implicit in investment return rate assumed.

3. <u>Mortality</u>

    1983 Group Annuity Mortality Table for healthy lives;
    1983 Railroad Retirement Board Disabled Annuitants Table for disabled lives.

4. <u>Retirement Age</u>

    For asset allocations and plan-wide withdrawal liability present value determination:

    From active service — Age 59, or completion of service requirement, if later.

    From inactive vested status -- Either first age eligible for an unreduced pension or 55 if eligible for less than 6% per year early retirement reduction.

    For individual withdrawal liability present value determinations:

    From active or inactive vested status -- First age eligible for an unreduced pension. (Age 55, if eligible for less than 6% per year early retirement reduction.)

5. <u>Actuarial Value of Assets</u>

    Sum of actuarial value at beginning of year and increase in cost value during year excluding realized capital gains or losses plus 20% of market value at end of year in excess of that sum, plus additional adjustment as necessary so that final actuarial value is within 20% of market value.