IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BOARD OF TRUSTEES, )<br>NATIONAL SHOPMEN PENSION FUND, )<br>et al., )<br>    Plaintiffs, )<br> )<br>v. )<br> )<br>NORTHERN STEEL CORP., et al., )<br> )<br>    Defendants )<br>_____ ) | Civil Action No. 05-cv-01479 (RWR) |

**PLAINTIFFS' REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

In their Opposition to the Board of Trustees of the National Shopmen Pension Fund's Motion for Summary Judgment, Defendants establish no dispute of material facts.

**1.   Defendants Did Not Initiate Arbitration At Any Point and the Time
      For Doing So Has Passed.**

Defendants argue that Northern Steel never received proper notice of the withdrawal liability. However, as the Court can see from the Supplemental Declaration of Fund Administrator A.H. Higgs Jr., the Fund sent a notice of Northern Steel's withdrawal liability dated September 30, 2003, by UPS, and UPS made three attempts at delivery to Northern Steel at 364 East Avenue, Oswego, NY 13126. It is undisputed that this was the correct and last known address of Northern Steel. See Affidavit of George H. Caruso, Ct Dk. # 40. Furthermore, the Fund sent another notice of withdrawal liability on February 10, 2004 to George H. Caruso at 255 Syracuse Avenue, Oswego, NY 13126-3130. Supp. Dec. of A.H. Higgs, Jr. It is undisputed that 255 Syracuse Avenue, Oswego, NY 13126 was Mr. Caruso's correct home address at that time. By mailing Notice to Northern Steel at its last known address, the Fund complied with the notice requirement of 29 U.S.C. § 1399(b)(1).

*See Miller v. Collectron Corp.*, 1999 U.S. Dist. Lexis 14413 *19 (E.D.N.Y.) (fund's notice sent to last known address of employer complies with withdrawal liability notice requirement). Defendants do not dispute that the September 30, 2003 letter was sent to Northern Steel at its correct last known address. Furthermore, notice to one member of a control group is notice to all members of that group. *Teamsters Pension Trust Fund v. Allyn Transportation Co.*, 832 F.2d 502 (9th Cir. 1987); *IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 127-28 (3rd Cir. 1986); *I.A.M. National Pension Fund v. TMR Reality Co., Inc.*, 431 F. Supp. 2d 1, 13-14 (D.D.C. 2006).

In any event , the Complaint that the Fund served upon Defendants in this action constitutes proper notice under ERISA Section 1399(b). *See Trustees of Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Rentar Industries, Inc.,* 1989 U.S. Dist. LEXIS 13385 (D. Ill. 1989)(finding employer received proper notice of withdrawal liability by being served with a complaint initiating an action to collect the same). And, even using that date as the notice date, the deadline for requesting arbitration has expired since under 29 U.S.C. § 1399(b) Defendants had only 90 days from the date of that notice to request review of the Fund's determination. The deadline for initiating arbitration is 60 days after the earlier of (1) the date of a plan's response to the employer's request for review or (2) 120 days after the date of the employer's request for review. 29 U.S.C. 1401(b)(1). If no arbitration proceeding is initiated in this time frame, the amounts demanded by the Fund are deemed due and owing. *Id.*; *see also TMR Reality Co.*, 431 F. Supp. 2d at 16. This lawsuit did not cut off Defendants' right to demand arbitration. *See Trustees of the Amalgamated Insurance Fund v. Vi-Mil, Inc.*, 1987 LEXIS 9915 *7 (S.D.N.Y.) (holding that initiation of suit to collect withdrawal liability did nothing to prevent employer from requesting arbitration and did not excuse employer's failure to do so); *Rentar Industries*, 1989 U.S. Dist. LEXIS

13385 at *16-17(holding that employer's answer to complaint in which it alleged it had been deprived of its right to arbitration was timely demand for arbitration).

The Defendants were served with the Complaint in this case on August 4, 2005. Return of Service Affidavit, Ct. Dk. No. 4. But at no time since have they sought to initiate arbitration of their withdrawal liability. Indeed, Defendants' do not dispute the Fund's Statement of Material Fact No. 9 to that effect: "Defendants failed to pay any of the quarterly withdrawal liability payments to the Fund, did not request plan sponsor review of the withdrawal liability payments, and did not initiate arbitration at any point."*See* Defendants' Statement of Disputed Material Facts at p. 1.

Any dispute between an employer and a multiemployer pension plan, such as the Fund, concerning a determination of withdrawal liability under ERISA must be resolved through arbitration. *See* 29 U.S.C. § 1401(a)(1), (b)(1) (ERISA § 4221(a)(1), (b)(1)); *McDonald v. Centra Inc.*, 946 F. 2d 1059, 1063 (4th Cir. 1991); *Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1056 (7th Cir. 1988). Defendants' had the opportunity in this proceeding to request arbitration in order to dispute the withdrawal liability determination. *See Vi-Mil, Inc.*, 1987 LEXIS 9915 at *7; *Rentar Industries*, 1989 U.S. Dist. LEXIS 13385 at *16-17. The deadline for doing so has long since expired. *Id*. Having failed to request arbitration, Nothern Steel has waived its right to arbitrate and is now liable for the entire withdrawal liability amount as requested in the Fund's motion for summary judgment. *See Vi-Mil, Inc.*, 1987 LEXIS 9915 at *7; *Bd. of Trustees v. BES Servs.*, 469 F.3d 369 (4th Cir. 2006).

2. **Defendants' Response Does Not Place the Facts Showing that Oswego Amusement, Inc. and GDR are Alter Egos, In Dispute.**

Defendants do not controvert any of the Fund's Statement of Material Facts, which establish

that Northern Steel, Oswego Amusements, and GDR are all alter egos. In fact, they concede that, at least until 1992, all these entities had the same ownership, management, and engaged in intra-company transactions. They argue that after 1992, the companies were kept and run entirely separate. However, the undisputed facts show that this was not the case.

Defendants' incorrectly contend that the applicable alter-ego standard for corporations is that stated in *Greater Kansas City Laborers Pension Fund v. Superior General Contractors, Inc.*, 104 F. 3d 1050, 1055 (8th Cir. 1997). The Fund correctly cited *Flynn v. R.C. Tile*, 353 F.3d 953 (D.C.Cir. 2004) in its opening brief as setting forth the proper alter ego standard to be applied to delinquent employers in pension fund cases in this Circuit. However, even under the heightened standard articulated by the Eighth Circuit, the undisputed facts show that Oswego Amusements and GDR are alter egos of Northern Steel. The standard stated in *Superior General Contractors* is that the legal fiction of the separate corporate entity may be rejected in the case of a corporation that: (1) is controlled by another to the extent that it has independent existence in form only and (2) is used as a subterfuge to defeat public convenience, to justify a wrong, or to perpetuate a fraud. 104 F. 3d at 1055.

Plaintiffs' Statement of Undisputed Material Facts, which are uncontroverted by Defendants, establish both elements. The Fund's Undisputed Material Fact No. 18, shows that the entities were not operated individually and that corporate form was completely ignored:

> In 2000, Romao Caruso, on behalf of Oswego Amusements, Inc. and at the advice of counsel, drafted a note from Oswego Amusements, Inc. to Northern Steel for $500,000. This was to represent the labor and materials Northern Steel had supplied to Oswego Amusements over the years. The note was not negotiated with Northern Steel, and Northern Steel never demanded the note or payment on the Note. The Note was never repaid. R. Caruso Dep., p. 33-40.

These facts contradict Defendants' unsupported claim that after 1992 the companies were kept entirely separate. After 1992, Northern Steel, Oswego Amusements, and GDR were neither operated separately nor were the transactions between them at arms length.

The undisputed facts show that Northern Steel is controlled by Oswego Amusements and GRD and is separate, at best, in name only. The $500,000 debt owed to it by Oswego Amusements remains completely unpaid despite the fact that the race track facilities and the good will of the business were sold. All of the remaining assets of Northern Steel are commingled with the assets of Oswego Amusements and GDR; those assets are in accounts owned and controlled by GDR. Plaintiffs' Statement of Material Fact No. 20, 21. Romeo Caruso and George Caruso, Jr., as owners of GDR and Oswego Amusements, have total control the assets of Northern Steel. Indeed, in his Opposing Affidavit, George Caruso Sr. concedes that after the sale of Northern Steel's assets, in 2003, he authorized Romao Caruso to "deposit the funds in any account that was available to him. . . ." and that ". . . future Northern Steel expenses or income. . . could be handled through his office." Ct. Dk. No. 40, ¶ g.

The Fund has satisfied the second element of the standard set forth in *Superior General Contractors* because the effect of these transactions is indeed a subterfuge to defeat public convenience, and perpetrate a fraud on the Fund and the other creditors of Northern Steel. The assets of Northern Steel are not readily detectable to creditors. In order to reach the assets of Northern Steel, a creditor such as the Fund must sue GDR and Oswego Amusements. Furthermore, as these assets are in accounts owned and controlled by those entities, there is nothing to keep those assets from being dissipated. Northern Steel should have maintained a bank account to wind up its affairs and to hold the assets for the benefit of its creditors  The only realistic explanation for its actions is

that it attempted to appear insolvent while placing it assets beyond the reach of its creditors. This is fraud. *Missal v. Washington*, 1998 U.S. Dist. LEXIS 6016 (D.D.C.).

Defendants' opposition to summary judgment does not place the material facts concerning the status of Oswego Amusements and GDR as alter egos of Northern Steel in dispute. As shown above, if anything, it confirms that they are.

    **3.**    **There Is Undisputed Evidence Before The Court That Justifies Piercing The Corporate Veils to Hold George Caruso, Jr. And Romao Caruso Personally Liable.**

Defendants argue that the fact that GDR is the "custodian presently of cash assets of both Northern Steel and Oswego Amusements does not justify. . ." piercing the corporate veil. This over simplifies the undisputed facts and circumstances of this case. GDR has complete control of Northern Steel's assets, there is no evidence that Northern Steel has entered into a trust agreement or any other of fiduciary agreement that limits GDR's control of these Funds. This is clearly not a typical arms-length business transaction wherein corporate formalities are observed. More importantly, the effect of this transaction is that Northern Steel is rendered insolvent and its assets are placed beyond the reach of known creditors. Under these circumstances, the Court has every reason to pierce the corporate veil. *Quinn v. Butz*, 510 F.2d 743 (D.C. Cir. 1975).

## CONCLUSION

For the foregoing reasons, and those stated in Plaintiffs' Statement of Points and Authorities in Support of its Motion for Summary Judgment, the Fund is entitled to Summary Judgment on all counts.

Dated: May 4, 2007                                  Respectfully submitted,
                                                    s/ Jeffrey S. Swyers

                                                    _____
                                                    Marc Rifkind, Esq (D.C. Bar No. 416183)
                                                    Jeffrey S. Swyers (D.C. Bar No. 494290)
                                                    SLEVIN & HART, P.C.
                                                    1625 Massachusetts Ave., NW Ste. 450
                                                    Washington, DC 20036
                                                    (202) 797-8700 (Telephone)
                                                    (202) 234-8231 (Facsimile )

CERTIFICATE OF SERVICE

I certify that on this 4th day of May, 2007, I caused the foregoing document to be served by ECF notification upon the following party:

>Dirk J. Oudemool
>Attorney at Law
>The Monroe Building, Ste. 600
>333 East Onodaga Street
>Syracuse, New York 13202
>
>Attorney for Defendant

/s/ Jeffrey S. Swyers
Jeffrey S. Swyers